**Exhibit 3 – December 18, 2018 letter from Chief Lallensack**

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Industry Programs Branch*

Washington, DC 20226

www.atf.gov

December 18, 2018

903010:MSK
814652

Jeffrey A. DiLazzero
Counsel
Salient Arms International, Inc.
975 Bridgeton Pike, Suite A
Sewell, New Jersey 08080

Dear Mr. DiLazzero:

This is in reply to your recent email to the Firearms Industry Programs Branch (FIPB) Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) on behalf of your client Salient Arms International Inc. (SAI) a Type 07 Federal firearms licensee. You request a determination whether Salient Arms International (SAI) is engaged in the business of manufacturing firearms for sale and distribution when SAI performs certain activities on SAI owned firearms. If the activities are considered to be manufacturing, the firearms would be required to be marked in compliance with the Gun Control Act.

The Gun Control Act (GCA), 18 U.S.C. § 921 (a)(10), defines a "Manufacturer" as "any person engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution." An individual is engaged in the business of manufacturing firearms if a "person . . . devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured." 18 U.S.C. § 921(a) (21)(A).

By contrast, the GCA at section 921(a)(11)(B) defines a "dealer", in relevant part, as "any person engaged in the business of repairing firearms or making or fitting special barrels, stocks, or trigger mechanisms to firearms." A dealer as defined in section 921(a)(11)(B) is engaged in the business of dealing firearms when the "person . . . devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit, but such term shall not include a person who makes occasional repairs of firearms, or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms." 18 U.S.C. § 921(a)(21)(D).

-2-

Mr. Jeffrey A. DiLazzero

The GCA at 18 U.S.C. § 923(i) requires manufacturers to identify firearms by means of engraving a serial number on the frame or receiver, as the Attorney General shall prescribe by regulations. The promulgated regulation at Title 27 of the Code of Federal Regulations (CFR) § 478.92 sets forth the marking requirements for the serial number and the manufacturer's name and other identifying information for the firearm manufactured.

In ATF Ruling 2010-10, ATF addressed the differences between gunsmiths and manufacturers. It specified that a **dealer/gunsmith who repairs, modifies, embellishes, refurbishes, or installs parts in or on firearms (frames, receivers, or otherwise) for, or on behalf of a licensed importer or licensed manufacturer**, is not required to be licensed as manufacturer under the GCA, provided the firearms for which such services are rendered are: (1) not owned, in whole or in part, by the dealer-gunsmith; (2) returned by the dealer-gunsmith to the importer or manufacturer upon completion of the manufacturing process, and not sold or distributed to any person outside the manufacturing process; and (3) already properly identified/marked by the importer or manufacturer in accordance with Federal law and regulations.

Because manufacturing is not defined by the GCA, courts have relied on the ordinary meaning of the word, including actions to "make a product suitable for use." *See Broughman v. Carver*, 624 F.3d 670 (4th Cir. 2010). The court concluded "that manufacturing firearms under § 923(a) entails assembling a firearm's individual components so as to render the firearm 'suitable for use'." ATF has consistently interpreted the term manufacturer to mean any person who engages in the business of making firearms by casting, alteration, or otherwise, for sale or distribution. *See ATF Ruling 2009-1, 2009-2.* ATF Ruling 2009-1 generally held that a person that engages in a process which primarily adds to the firearms appearance by painting, dipping, camouflaging, or engraving the exterior surface is not a manufacturing activity. The Ruling contrasted this activity from manufacturing processes which primarily enhance a firearms durability.

Further, ATF Ruling 2009-2 held that "any person who installs 'drop in' replacement parts in or on existing, fully assembled firearms does not need to be licensed as a manufacturer under the [GCA]." The Ruling defines a drop-in replacement part as a part that can be assembled without drilling, cutting, or machining a firearm. A drop-in replacement part has the same design, function, substantially the same dimensions, and does not affect the manner in which a projectile is expelled from the firearm.

In your letter, you provide the detailed processes that you use to make the SAI model Glock, Smith & Wesson, Arsenal Firearms, Benelli, Breda, and Remington firearms. Specifically, SAI receives the firearms from the factory and/or distributor, removes certain parts, and replaces them with SAI parts of a different design. In fact, this design is specifically intended to improve and differentiate the SAI firearm from the original

-3-

Mr. Jeffrey A. DiLazzero

manufacturer's design. Although not specifically stated, the letter appears to indicate these finished firearms are then resold by SAI to individual customers. This is supported by the advertisements on SAI's website.

For the reasons listed below, FIPB finds that the installation of the parts as proposed in SAI's letter on the Glock pistol, Smith & Wesson M&P pistol, Arsenal pistol, Benelli M2 and M4 shotgun, and Remington 870 pump action shotgun is not the installation of drop-in replacement parts and is a manufacturing activity. SAI engages in the business of performing this manufacturing activity for sale and distribution and, therefore, is a manufacturer. Therefore, SAI must mark the firearms in accordance with 27 CFR § 478.92.

**Glock**
SAI retextures the Glock slide with stylized front serrations and adds windows and pocket cuts to (30% of the pistols). The serrations on the Glock slide allow for an individual to better grip and rack the slide. The window and pocket cuts on the Glock slide lightens the frame of the firearm. Generally, a lighter frame will result in faster recoil of the firearm for an improved rate of fire by the shooter. Further, the window and pocket cuts permit the installation of lighter springs to use a lighter ammunition load. The cuts allow for the release of gas if a ported barrel is used on the Glock slide which prevents muzzle rise.

ATF Ruling 2009-2 generally held that a person may install drop in replacement parts of the same design, function, substantially the same dimensions, and which does not affect the manner in which a projectile is expelled from the firearm. SAI installs a drop-in slide of a different design which affects the function and manner in which a projectile is expelled from the firearm. SAI assembles a newly designed SAI pistol from the original factory Glock received. Further, SAI performs these manufacturing activities for the purpose of sale and distribution which requires a Type 07 license and SAI must mark the firearms as the manufacturer.

**Smith & Wesson M&P Pistol**
As previously stated, the retexturing of the standard Smith & Wesson M&P slide with stylized front serrations and window cuts are manufacturing activities. SAI assembles a newly designed SAI pistol from the factory Smith & Wesson M&P pistol originally received. SAI engages in the business of performing these manufacturing activities for the purpose of sale and distribution and must mark the firearms as the manufacturer.

**Arsenal Firearms**
Like the Smith & Wesson M&P pistol and the Glock slide, the window cuts added to the top of the slide of an Arsenal Firearms pistol is a manufacturing activity for the same reasons previously discussed. Further, the addition of a titanium nitride coated barrel to the firearm, like anodizing and bluing of a firearm, enhances the durability of the firearm

-4-

Mr. Jeffrey A. DiLazzero

and is not merely cosmetic as considered in ATF Ruling 2009-1. ATF Ruling 2009-1 indicates that enhancing the durability of a firearm is a manufacturing activity. SAI assembles a newly designed SAI pistol from the factory Arsenal pistol originally received. SAI engages in the business of performing these manufacturing activities for the purpose of sale and distribution and must mark the firearms as the manufacturer.

**Benelli Shotgun**
SAI modifies a fully functional standard Benelli M2 or M4 shotgun and assembles a newly designed shotgun by performing a number of manufacturing activities. SAI cuts the standard barrel to shorten the barrel length to 18.5" and re-chokes the shorter barrel for the installation of Carlson's Tru Chokes. SAI may then port the barrel to provide for the release of gasses to reduce muzzle rise of the firearm. SAI removes material from the bolt carrier to further lighten the carrier and installs lighter springs on the firearm. The bolt carrier is also coated with titanium nitride. Finally, SAI changes the factory stock by removing the fork in the Benelli lifter.

These activities involve cutting and drilling component parts of the firearm and reinstalling these parts to assemble a newly designed firearm for sale or distribution. Additionally, the addition of a titanium nitride coated bolt carrier is not merely cosmetic as considered in ATF Ruling 2009-1. This type of coating enhances the durability of the firearm, like anodizing and bluing, and is a manufacturing activity. SAI engages in the business of performing these manufacturing activities to assemble a newly designed SAI shotgun for purposes of sale and distribution and must mark the firearms as the manufacturer.

**Breda**
Per your letter, SAI does not alter the Breda shotgun and, therefore, does not perform a manufacturing activity for the sale and distribution of Breda firearms.

**Remington**
SAI performs the same activities on the barrel, and bolt carrier and springs on the Remington 870 shotgun as performed on the Benelli shotgun. As previously discussed, these activities involve cutting and drilling component parts of the firearm and reinstalling these parts to assemble a newly designed firearm for sale or distribution. SAI engages in the business of performing these manufacturing activities to assemble a newly designed SAI shotgun for purposes of sale and distribution and must mark the firearms as a manufacturer.

SAI installs improved parts on firearms owned in whole or in part by SAI, and alters and reinstalls parts on these firearms. As a result, SAI assembles newly designed firearms as a regular course of trade or business with the principle objective of livelihood and profit for sale and distribution to customers. Therefore, SAI must be a licensed as a Federal

-5-

Mr. Jeffrey A. DiLazzero

firearms licensee manufacturer (Type 07) and mark all firearms manufactured in accordance with 27 C.F.R. § 478.92.

Please note, the GCA at section 922(k) makes it unlawful for any person to transport, ship, or receiver any firearm which has the importer's or manufacturer's serial number removed, obliterated, or altered. SAI may adopt the previous serial number of the firearms as received provided SAI has not previously assigned the serial number to a SAI firearm.

We trust the foregoing has been responsive to your request. If you should have further questions, please contact the Firearms Industry Programs Branch at 202-648-7190.

                                      Sincerely yours,

                                      Kyle Lallensack
                             Chief, Firearms Industry Programs Branch

Enclosure: original request

c:   Director, Industry Operations, San Francisco Field Divsion